### MONROE v. HALL et al. (No. 1927.)*

(Court of Civil Appeals of Texas. El Paso. Nov. 24, 1926. Rehearing Denied Jan. 13, 1927.)

**I. Agriculture ⊜➡12—Farm laborer failing to comply with statute held not entitled to lien on crop (Rev. St. 1911, art. 5645).**

Farm laborer, who had fully performed contract for putting in crop, *held* not entitled to statutory lien for noncompliance with Rev. St. 1911, art. 5645, requiring duplicate account to be made within 30 days to entitle farm laborer to lien.

**2. Landlord and tenant ⊜➡323—Agreement whereby cropper's contract was rescinded and cropper was to be paid agreed rate for labor made him employee.**

Where owner rented land to tenant for season for portion of crop as rental, subsequent agreement between owner and tenant, making former agreement void, and providing tenant should be paid at daily rate for labor, *held* not attempted sale, but rescission, making former tenant employee.

**3. Landlord and tenant ⊜➡326(I)—Though landlord had rented farm on shares, subsequent agreement by which tenant became employee gave landlord title to entire crop.**

Where landlord and tenant, who had entered into agreement for working farm on shares, subsequently rescinded contract, and substituted agreement whereby tenant was to work at agreed rate, payment for past services being secured by chattel mortgage, execution of subsequent agreement made landlord sole owner of all crop to be grown on land.

**4. Chattel mortgages ⊜➡141—Crop mortgage, given by landlord excepting tenant's share, held prior lien on all crops, where tenant subsequently became mere employee, taking second crop mortgage for past services.**

In action by farm employee, payment for whose past services was secured by chattel mortgage on crop, future services being provided for at agreed rate per day, against holder of prior chattel mortgage of landlord, first mortgage covering all crops grown on farm except tenant's share *held* prior lien on all crops, though at time of execution laborer was under contract with landlord by which he was to receive 60 per cent. of crops, where subsequent contract by which tenant became mere farm laborer expressly made his mortgage inferior.

**5. Chattel mortgages ⊜➡124—Provision covering all increase and additions to crop covered property of landlord later acquired through rescission of tenant's contract for share of crop.**

Crop mortgage, covering all increase and additions to crop by purchase or otherwise, *held*

sufficient to attach to property acquired by landlord by virtue of rescission of contract with tenant for farming land on shares by which former tenant became mere employee.

**6. Chattel mortgages ⊜➡124—Under appropriate language, lien of mortgage will attach to mortgagor's after-acquired property.**

Under appropriate language contained in mortgage, lien of chattel mortgage will attach to after-acquired property of mortgagor.

**7. Landlord and tenant ⊜➡322—Tenant, who agreed with landlord to rescind old contract on condition of performance of new agreement for hire, waived condition by suing on second contract.**

Where tenant, who rented farm on shares, later entered into contract with landlord by which both parties mutually agreed that old contract should be void on specific performance of new agreement for hire, tenant, who sued to recover under second agreement, cannot contend that rescission was conditional on second contract's being fully performed, as tenant, by electing to treat second contract as absolute, had waived condition.

Appeal from District Court, Reeves County; Chas. Gibbs, Judge.

Action by C. E. Hall against Lee Monroe and others. From a decree awarding to defendant, Lee Monroe, a prior lien upon 40 per cent. of crop, which he claimed under a chattel mortgage, and awarding to plaintiff certain priority on the balance, defendant, Lee Monroe, appeals, and plaintiff files cross-assignments of error. Reversed and rendered.

Lee Monroe, of Topeka, Kan. (C. M. Monroe, of San Diego, Cal., of counsel), for appellant.

Harper & Howard, of El Paso, and Russell & Starley, of Pecos, for appellees.

HIGGINS, J. On January 30, 1924, S. V. Biggs and C. E. Hall entered into a written contract whereby the former leased to the latter, for the year 1924, 160 acres of land, described in instruments hereinafter mentioned. Material provisions of the contract are as follows: All of the land except ten acres was to be planted in cotton; the cotton was to be divided 40 per cent. to Biggs and 60 per cent. to Hall. Biggs was to furnish material and build a shed and furnish material for a corral; to pump water for irrigating the land, and run the water into the ditch at the pumphouse; to furnish all tools then on the land belonging to him and two mules, and to break the land with a tractor. Hall agreed at his expense to construct said coral; haul the crude oil for the use of the engine to the farm; feed the teams of himself and Biggs; to poison the cotton for bugs and worms, if necessary; to border, level, irrigate, plant, tend, and

harvest the crop; haul the crop to Pecos; furnish the seed; and pay for the gas and lubricant for the tractor.

Shortly before they entered into this contract, Biggs and Hall had a conversation with the appellant, Monroe, and the latter was advised that Biggs and Hall proposed entering into the rental contract, and in a general way Monroe was advised of its nature. The purpose of the conversation was an arrangement for Biggs to obtain from Monroe the money necessary for Biggs to discharge his obligations under the contract, and Monroe agreed to so furnish the money. Pursuant to the arrangement thus made, Biggs, on March 4, 1924, gave Monroe a chattel mortgage, which was duly filed for record March 14, 1924. This mortgage secured certain notes of Biggs therein described and all future advances and indebtedness. It covered certain chattels therein described, and "also all cotton and other crops grown during the year 1924 by party of the first part or for him on his farm in Reeves county, Tex., being the southeast quarter of section seventy-four (74) in block four (4) H. & G. N. Ry. Co. survey, excepting the share of tenants farming said land which in that instance shall not exceed 60 per cent. of the crop." "Also all liens acquired by party of the first part on the share of crop of either of his tenants for advancements, together with all increase and additions thereto, whether by purchase or otherwise, all of which are especially included herein."

On April 19, 1924, Hall and Biggs entered into this contract:

"Know all men by these presents: That a certain contract was made and entered into on the 30th day of January, 1924, by and between S. V. Biggs, designated as the landlord, and C. E. Hall. designated as the tenant, the conditions being that the said landlord is the owner of certain described land as follows:

"The southeast one quarter (S. E. ¼) of section No. seventy-four (74) block No. four (4), H. & G. N. Ry. Co.'s survey, Reeves county, Tex.

"In that this certain contract above referred to, it was mutually agreed between the landlord and tenant that the said tenant rented or leased said described land for the crop year of 1924, and therein agreed to certain specific performances, such as labor and all other necessary performance for putting in the said crop and the harvesting of same, and the landlord was to furnish said land described above. and, further, to furnish certain items of material, machinery, etc., and there was to be a division of the crop in the ratio of 40 per cent. for the landlord and 60 per cent. for the tenant.

"Now, therefore, in consideration of the payment of the sum of one dollar, the receipt of which is hereby acknowledged, each to the other, and for other good and valuable considerations, the said parties hereto mutually agree that said contract above described and set out shall become and be declared null and void, and of no force and effect, upon the specific perform-

ance of this contract between the parties hereto, the said S. V. Biggs and C. E. Hall each agree with the other as follows:

"First. That the said S. V. Biggs shall execute a certain crop mortgage on crop grown on the above-described land in the sum of ten hundred seventy-four dollars as evidenced by a certain promissory note in the sum of $1,074.00, which is made a part of said crop mortgage, and that same shall become due and payable on or before November 1, 1924. That the items that make up the amount named herein, comprise the following:

| | |
|---|---:|
| "All labor performed and other items furnished by the said C. E. Hall necessary for putting in crop up to this date...... | $ 550 00 |
| For two horses, being described as one blue color and one gray color, both having a triangle brand ——— on left hip... | 175 00 |
| One double disk plow........................ | 25 00 |
| One harrow ................................. | 10 00 |
| Several parts for planter................... | 4 00 |
| One promissory note, executed by the said S. V. Biggs, payable to the order of C. E. Hall, dated on or about Jan. 30, 1924, in the sum of............................ | 300 00 |
| Certain sum agreed upon to balance account .......................... | 10 00 |
| Total ...................................... | $1,074 00 |

"Second. The said C. E. Hall agrees to furnish during the period of putting in the crop of 1924 on said land described herein, two (2) men and two (2) teams, and the said S. V. Biggs agrees to pay an aggregate sum of $7.00 per day for said labor, to be paid for within sixty (60) days from the date of the completed service of the said C. E. Hall or his employees.

"Third. It is further understood and agreed that the said C. E. Hall shall have the use of all the main buildings on said farm, save and except one (1) room in the dwelling, and, at the end of the working period of putting in the crop, hereby agrees to surrender peaceable possession and occupancy of all said buildings to the said S. V. Biggs.

"This is to certify that the certain note in the sum of $300.00 described and set out in the schedule under paragraph 'First' has been lost, and the said C. E. Hall waives all right and interest in said note, and same is hereby canceled, and becomes null and void and of no value.

"That the said crop mortgage described under paragraph 'First'of this contract said mortgage is junior and inferior to a crop mortgage given to Lee Monroe of Barstow, Tex., in the sum of $———.

"It is further understood and agreed between the parties to this agreement that, in the event of a failure of the crop for the year 1924, the said S. V. Biggs agrees to give a crop mortgage for the year 1925 for the entire balance remaining unpaid on this crop mortgage from the 1924 crop.

"This contract gives the right and privilege to both parties to this contract to have the right to terminate the working agreement as set out under paragraph marked 'Second' of this contract by giving 10 days notice to either party."

At the same time Biggs gave Hall the following note and mortgage:

"$1,074.00.      Pecos, Tex., April 19, 1924.

"On or before Nov. 1st, 1924, for value received, I promise to pay to the order of C. E.

Hall the sum of ten hundred seventy-four ($1,-074.00) dollars, at Pecos, Tex., with ten per cent. interest per annum from date until paid. And in the event default is made in the payment of this note at maturity, and it is placed in the hands of an attorney for collection, or suit is brought on the same, then an additional amount of ten per cent. on the principal and interest of this note shall be added to the same as collection fees. S. V. Biggs.

"Due Nov. 1, 1924.

"The above obligation is given in settlement for one $300.00 note, labor, livestock and goods, wares and merchandise furnished to me by said C. E. Hall, for labor to date, and other items stipulated in a certain contract executed this day by and between S. V. Biggs and C. E. Hall, conditions herein named are intended and shall operate in law as a perfect and bona fide lien upon all such crops, either of corn or cotton, as may be grown upon S. V. Biggs farm in Reeves county, Tex., the present year, as well as upon all stock implements that may be used in the cultivation of said crops; and upon default on his part to pay the above-described obligations, when due, out of the first of the proceeds of said crops, it is agreed and understood that the said C. E. Hall may enter upon the said premises and take possession of said crops and stock, or such portions of the same as may be sufficient in amount to pay off and discharge this obligation, and such necessary expenses as may be incurred in collecting the same. The property used in the cultivation of the crops, as herein described, is of the following description, viz.:

"The southeast one-quarter (S. E. ¼) of section No. seventy-four (74), block No. four (4), H. & G. N. Ry. Co.'s survey, Reeves county, Texas.

"(This mortgage is junior and inferior to a certain crop mortgage given to Lee Monroe of Topeka, Kan.) and the implements being such as are commonly used upon farms of the character named. S. V. Biggs."

Hall did what he contracted to do under the last-mentioned contract, and Biggs became thereby indebted to him in the sum of $941.70.

Certain cotton was raised upon the premises which was sold, and the net proceeds are held by Monroe in trust under agreement of the parties that it should be disposed of according to the judgment rendered herein. The suit was instituted on October 18, 1924, by Hall against Biggs and Monroe and another not necessary to mention.

In his petition Hall set up verbatim and declared upon the note and other instruments dated April 19, 1924. He alleged that under the first-quoted instrument of that date Biggs had become indebted to him for services rendered in the sum of $941.70. He prayed judgment for said sum, and also for the amount due upon the note for $1,074. He asserted a mortgage and laborer's lien upon the cotton grown upon the premises, and asked for foreclosure thereof.

Monroe answered and set up his rights. The issue presented by this appeal is as to the priority of the liens of Hall and Monroe.

The trial court held that Monroe had a prior lien upon 40 per cent. of the crop; that Hall had no lien to secure said sum of $941.70, but had a prior lien upon 60 per cent. of the crop to secure the note for $1,074, and judgment was rendered accordingly, from which Monroe appeals.

[1] The judgment cannot be upheld upon the theory of appellee that he had a superior statutory laborer's or equitable lien upon the cotton which was in part produced by his labor. No statutory lien attached, because compliance with article 5645, R. S. 1911, was not shown. Upon what theory an equitable lien attached we are not advised, and none occurs to us. Whatever lien Hall acquired was contractual by virtue of the instruments dated April 19th. This was the view of the trial court, which seems to have been of the further opinion that Monroe's mortgage never attached to more than 40 per cent. of the crop to be grown on the premises; that the contract signed by Biggs and Hall on April 19th constituted a sale by Hall to Biggs of the former's 60 per cent. interest in the crop, which was not covered by Monroe's mortgage; hence the mortgage given by Biggs to Hall on April 19th on all the crop to be grown on the land attached to said 60 per cent. superior to any claim of Monroe. The trial court was of the further opinion that the provisions in the instruments of April 19th, subordinating the Hall lien to the Monroe crop mortgage, related only to Monroe's mortgage on 40 per cent. of the crop. Appellee also relies upon this theory in support of the judgment.

[2-6] We do not regard the instrument of April 19th, signed by Biggs and Hall, as evidencing an attempted sale. It was a rescission by mutual agreement of the contract of January 30th, and by its terms Hall became an employee of Biggs to work on the farm. But it is immaterial whether it be regarded as a sale or rescission, for the fact remains that, in either event, upon the execution thereof Biggs became the sole owner of all the crop to be grown upon the land. Monroe's mortgage covered "all cotton and other crops grown during the year 1924 by party of the first part (which was Biggs), or for him on his farm (describing land), excepting the share of tenants farming said land which in that instance shall not exceed 60 per cent. of the crop." When Biggs became the owner of all the cotton to be grown upon the land in 1924, there was no tenant's share in the crop left, and under the express language of the mortgage it attached to all the crop to be grown. Especially is this true in view of the further provision in Monroe's mortgage, "Together with all increase and additions thereto by purchase or otherwise, all of which are especially includ-

ed herein." It is well settled that under appropriate language contained in a mortgage the lien will attach to after-acquired property by the mortgagor, and the language last quoted was sufficient for that purpose.

We see no escape from the conclusion that on April 19th Biggs became the owner of all the crops to be grown on the land, and all of the crop became subject to Monroe's mortgage. This being true, the Monroe mortgage had priority over that of Hall because of its prior date and record as well as the express provision of Hall's mortgage that it was junior and inferior to Monroe's.

[7] Appellee further asserts that the contract of April 19th was conditional "upon the specific performance of" the same, and the condition had not been performed because Biggs had not paid Hall what he agreed to pay over the contract. As to this it is sufficient to say, if the contract was conditional, Hall has waived the condition by this suit to enforce payment of the money due thereunder. He has elected to treat as absolute the obligation of Biggs to pay; has sued and recovered judgment therefor. Nor do the pleadings present any issue of the kind here suggested.

The rulings made dispose of all cross-assignments presented by Hall adversely to him.

The judgment will be reversed and here rendered so as to accord priority in full to the crop mortgage of Monroe over Hall's mortgage.

Reversed and rendered.